# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ROBERT UNDERWOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:16-cv-00892-LSC-TMP |
| ) | |
| WARDEN LEON BOLLING, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. (Doc. 1).  The plaintiff names the following defendants in the complaint: Warden Leon Bolling, Captains White, Tew and Baldwin, Lieutenant Terry Thomas and Corrections Officer Fox.  (*Id.* at 3).  The plaintiff seeks monetary and injunctive relief.  (*Id.* at 4).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against

government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id.* at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to

relief.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. Factual Allegations

Taking the well-pleaded factual allegations of as complaint as true, the plaintiff has alleged the following:

During the time period relevant to his allegations, the plaintiff was a state inmate assigned to O Dorm at W.E. Donaldson Correctional Facility (WEDCF), a maximum security prison. (Doc. 1 at 6, 14, 16). O Dorm housed 130 inmates and was operating at "double its designed capacity." (*Id.* at 7).

Lt. Terry Thomas "is responsible for approving and or assigning 'each security post' an officer" (*id.* at 12, 15) in accordance with numerous Alabama

Department of Corrections' rules, regulations, policies, and WEDCF's Standard Operating Procedures (*id.* at 8) (citing Regulation Nos. 018, 024, 204, 208, 218, 231-232; Rule No. 006; and Administrative Regulation Nos. 300, 302, 306, 316, 321, 331, 402).[1] As a housing quarter, O Dorm "constitutes a security post that must be filled [by three corrections officers] 24 hours a day/night." (*Id.* at 15-16). Specifically, "[a]t all times an officer is to be assigned on the 'floor,'" another officer is to be assigned as "a 'rover,'" and a third officer is to be assigned to the "'cube' . . . overlooking the entire O Dorm." (*Id.* at 16). Despite these requirements, Lt. Thomas never assigns an officer to man the cube in O Dorm, and he "authorizes, permits" and "allows officers to abandon their post[s] on . . . Southside Dorms" K through O. (*Id.*).

Captains White, Tew and Baldwin are bound by the same rules, regulations, policies and Standard Operating Procedures (SOPs) as defendant Thomas. (*Id.* at 8). They are responsible for ensuring duty rosters are filled, overseeing security and investigative functions from an administrative perspective (*id.*), and enforcing policies related to administrative, security, general population and segregation matters (*id.* at 16). However, White, Tew and Baldwin ignore their responsibilities, including their duties to assign "an adequately trained officer" to O Dorm and to discipline officers who abandon post. (*Id*. at 8).

---

[1] The plaintiff also refers generally to state statutes, but does not identify any statutory provisions by number or content.

4

Warden Bolling is "directly or indirectly responsible for" the plaintiff's "safety from violence" because he is responsible for "ensuring adequately trained officers oversee the assigning of officers to security post[s] such as 'O Dorm' and ensuring administrative action is taken when such duties are in fact neglected and abandoned." (*Id.* at 13). Bolling "intentionally, willfully, recklessly and knowingly fail[s] to do so," and as a result, inmate "safety" is "being thwarted and no proper action" is taken "to correct" the security issues. (*Id.*).

"Each and every defendant knew or should have known" prior to January 16, 2016, that the security problems in O Dorm needed to be corrected as inmates had "been assaulted, stabbed, or injured by other inmates solely because the dorm was not being adequately secured," *i.e.*, the dorm was not "occupied by the presence of an assigned correctional officer" in the cube and the roving and floor officers "regularly abandon[ed] their O dorm post." (*Id.* at 10) (internal quotation marks omitted). Yet, Thomas and his defendant supervisors refused to "correct" the duty roster deficiencies and ensure proper training for the officers who were assigned to and abandoned their posts. (*Id.*).

Further, as a matter of "practice and or custom," any officer's "breach of duty" is "cover[e]d" up, inmates are denied access to the Alabama Department of Corrections' (ADOC) internal investigative agency (I&I), and inmate "complaints, requests or demands" to the WEDCF administration about the lack of security are

5

ignored. (*Id.* at 16). Finally, the plaintiff alleges WEDCF "administration . . . has an extended history of intervening to stop proper investigation into criminal activities such as I & I coming in on inmates assaulted with prison made weapons." (*Id.* at 17).

Having set forth the preceding background, the plaintiff alleges he went to bed in O Dorm "without incident or conflict with any inmate or inmates" on January 15, 2016. (*Id*. at 14). At approximately 1:20 a.m. on January 16, 2016, the plaintiff was awakened "by inmate Jerry Lee Matthews" beating him "with a lock on a belt, and stabbing him "with a prison made ice pick." (*Id.*). The plaintiff had to defend himself in bed until he could get up, push inmate Matthews off, and run away. (*Id.*). "[F]or a few minutes," Matthews chased the plaintiff around O Dorm and blocked "the only way out." (*Id.*). Finally, the plaintiff was able to make it out of the door and ran 200 yards away from the dorm to the guard shack. (*Id.*).

When he reached the guard shack, Officer Cunningham asked the plaintiff what had happened, the plaintiff explained to the best of his ability, and Cunningham took him to the infirmary where he gave his first statement. (*Id.*). The plaintiff told Lt. Terry Thomas what had occurred. (*Id.*). "Medical staff released" the plaintiff back into population the same morning "without observation." (*Id.*). The plaintiff suffered five stab wounds, a black eye and

lifelong scar on his nose from the attack. (*Id.* at 16). He "still has trouble sleeping." (*Id.* at 15).

Officer Fox was assigned to O Dorm from 6 p.m. on January 15, 2016, to 6 a.m. on January 16, 2016. (*Id.* at 13-14). However, "[a]t no time before or during the attack was Officer Fox on or around his assigned post." (*Id.* at 14-15). Instead, he "intentional[ly], knowingly" and "willing[ly]" abandoned his post." (*Id.* at 11). "Many inmates in O Dorm" are "willing to testify" that "Fox left his post and was nowhere around at the time of the incident." (*Id.* at 15). The plaintiff "requested to speak with I & I to no avail and Officer Fox was never disciplined," as "his 201 file will establish." (*Id.*). The plaintiff asserts that if "Fox been on the post he was assigned, just his presence alone may have prevented the attack." (*Id.*).

### III. Analysis

**A.    Representation of similarly situated inmates**

The plaintiff claims he is suing on his behalf and on behalf of similarly situated inmates. (Doc. 1 at 1). However, the plaintiff only "has standing to seek redress for injuries done to him," and "may not seek redress or injuries done to others." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972). Further, a *pro se* prisoner cannot represent other prisoners in a class action lawsuit. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). It would be clear error to allow the plaintiff to bring this suit on behalf of other prisoners. *See Johns v. County of San*

*Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) ("While a non-attorney may appear *pro se* on his own behalf, '[he] has no authority to appear as an attorney for others than himself.'")).  As such, the remainder this report and recommendation shall address only the claims for which the plaintiff seeks personal redress.

**B.     Fourteenth Amendment Due Process**

Throughout his pleadings, the plaintiff claims the defendants violated his Fourteenth Amendment procedural and substantive due process rights by refusing to protect him from unsafe conditions in WEDCF's O Dorm and refusing to discipline Officer Fox.  (Doc. 1 at 7-8, 10-11).  However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not [procedural due process or] the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 813 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).  As set out *infra*, the Eighth Amendment's proscription against cruel and unusual punishment provides the constitutional grounds upon which the plaintiff's claims rest.  Thus, the plaintiff's Fourteenth Amendment due process claims against all defendants are due to be dismissed.

## C.     Injunctive Relief

To the extent the plaintiff requests injunctive relief from the defendants, his claims are due to be dismissed. "Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (citing *Dudley v. Stewart*, 724 F.2d 1493, 1494-95 (11th Cir. 1984)). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Thus, "[t]he general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) (alteration supplied) (citing *McKinnon v. Talladega Co., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984); *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (per curiam)). On January 3, 2017, the plaintiff notified the court he had been transferred from WEDCF to Limestone Correctional Facility in Harvest, Alabama. (Doc. 7). After his transfer from WEDCF, the plaintiff's claims regarding the conditions at that facility "no longer presented a case or controversy." *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th

9

Cir. 1985)).

Accordingly, the plaintiff's request for injunctive relief is **MOOT**.

### D. Eleventh Amendment Immunity

A law "suit against the State [of Alabama] and its [agencies for monetary damages] is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)).  No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).  Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the state itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

All defendants are employees of the Alabama Department of Corrections, which is an agency of the State of Alabama.  The plaintiff's lawsuit against the defendants in their *official* capacities is a suit against the state itself; and as such, Eleventh Amendment immunity prohibits his claims for monetary damages.  The

remainder of this report and recommendation addresses the plaintiff's Eighth Amendment claims for monetary damages against the defendants in their *individual* capacities.

**E.     Eighth Amendment - Failure to Protect**

In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes and parallel citations omitted). Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson*, 501 U.S. at 298.

**1.     The Objective Standard**

"'[I]t is well settled that a prison inmate has a constitutional right to be protected . . . from physical assault by other inmates.'" *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986)). "The Eighth Amendment 'imposes [a] dut[y] on [prison] officials' to 'take reasonable measures to guarantee the safety of the

inmates.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 5121 U.S. 825, 832 (1994)). Still, "a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs Co., Ga*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir. 1990)). Therefore, not "every injury suffered by one prisoner at the hands of another that translates into [a] constitutional liability...." *Id.* at 1319 (quoting *Farmer,* 511 U.S. at 833 (citations omitted)).[15]

In order for constitutional liability to attach, "a prisoner-plaintiff must first demonstrate 'an objectively substantial risk of serious harm to prisoners.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Co., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001)). This is accomplished by alleging facts tending to show the existence of "an excessive risk of inmate-on-inmate violence at" a prison *i.e..*, an atmosphere where the "'threat of violence'" at the hands of other inmates is "'constant.'" *Purcell*, 400 F.3d at 1320 (quoting *Woodhaus v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973) (citation omitted)). Conversely, "'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment.'" *Id.*; *Shrader v. White,* 761 F.2d 975, 978 (4th Cir. 1985) (quoting *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir. 1980) ("'A pervasive risk of harm may not ordinarily be shown by pointing to a single

incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror.")). "Within [a prison's] volatile 'community,' prison administrators are . . . under an obligation to take *reasonable measures* to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (emphasis supplied

The facts supporting the presence of an objectively substantial risk of serious harm to prisoners in the plaintiff's case are as follows.  O Dorm is designated a security post and as such, ADOC rules and regulations as well as WEDCF standard operating procedures require the dorm (at an intended 75-inmate capacity) to be manned 24 hours a day by a cube officer, a roving officer and a floor officer.  At the time the plaintiff was assaulted, O Dorm housed 130 inmates.  While a more detailed factual connection between dorm overcrowding and violence would have been preferable, the plaintiff's assertion that inmates had been stabbed, assaulted or injured by other inmates prior to January 16, 2016, is sufficient to infer that link.

To accommodate the 130 inmates and the inferential increase in violence, O Dorm security was not bolstered.  Nor was the dorm manned at the level required by various rules, regulations and policies for 75 inmates.  Instead, dorm security was *decreased* from 3 to 2 officers.  Therefore, an officer never was assigned to man the cube, the only security location providing a full overview of the entire dorm.  The two remaining corrections officers, either assigned to the floor or as a

rover, were responsible for maintaining constant security in the dorm during their 12 hour shifts.  In reality, the floor and roving officers were authorized and permitted to abandon their posts and routinely did so.

In this environment, inmate-on-inmate assaults, including the plaintiff's assault, occurred.  Abandoning officers, including Officer Fox in the plaintiff's case, were not disciplined and additional training was not provided.  The plaintiff's and other inmates' complaints about the lack of security were ignored, the failure of officers to man their posts was covered up or downplayed, and WEDCF administration either denied inmates access to the ADOC internal investigations division, as happened to the plaintiff, or intervened to stop internal investigations concerning inmate on inmate criminal activity with prison made weapons.  It is obvious that such conditions proliferate violence.

"[W]here a pro se pleading alleges specific facts, it should not be dismissed unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Riley v. Jeffes,* 777 F.2d 143, 148 (3rd Cir. 1985) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (internal citation omitted)). The plaintiff has alleged sufficient facts to establish the strong likelihood of serious injury to inmates in O Dorm.

### 2. The Subjective Standard

The Supreme Court says that prison officials will be liable for violating the Eighth Amendment when they are deliberately

> indifferent to the substantial risk of serious harm to inmates. Put differently, officials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk. *See Farmer v. Brennan,* 511 U.S. 825 (1994).

*Marsh v. Butler Co., Ala.,* 268 F.3d 1014, 1026-27 (11th Cir. 2001) (parallel citation omitted).

> A prison official possesses actual, subjective knowledge of a substantial risk when the official is "both... aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw[s] the inference." *Farmer,* 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. The trier of fact may, therefore, "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Bowen*, 826 F.3d at 1320–21. "[S]ubjective knowledge may be established 'by reliance on any relevant evidence.'" *Id.* (quoting *Farmer*, 511 U.S. at 848).

"Mere knowledge of a substantial risk of serious harm, however, is insufficient to show deliberate indifference." *Hale v. Tallapoosa Cty. Ala.,* 50 F.3d 1579, 1583 (11th Cir. 1995). The plaintiff also is required to plead facts showing "that, with knowledge of the substantial risk of serious harm," the defendants "knowingly or recklessly 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Id.* (quoting *Farmer,* 511 U.S. at 847). This failure can be established by pleading facts tending to show a defendant "knew of ways to reduce

the harm but knowingly [or recklessly] declined to act." *Id.*

The plaintiff alleges "[e]ach and every defendant knew or should have known" prior to January 16, 2016, that the security problems in O Dorm needed to be corrected because the dorm was overcrowded, and inmates had "been assaulted, stabbed, or injured by other inmates solely because the dorm was not" being adequately secured," *i.e.*, the dorm was not "occupied by the presence of an assigned correctional officer" in the cube and the roving and floor officers "regularly abandon[ed] their O dorm post." (Doc. 1 at 10) (internal quotation marks omitted).

Despite the obvious risk of harm to O Dorm inmates, as well as knowledge of a prior history of violence incidents in the dorm due to overcrowding and lax security, on January 16, 2016, Officer "Fox left his post and was nowhere around at the time of the incident." (*Id.* at 15). Such facts are sufficient to direct defendant Fox's respond to the plaintiff's allegations.

### a. Lieutenant Thomas

Defendant Thomas was directly responsible for assigning security officers to O Dorm in accordance with ADOC rules and regulations and WEDCF procedures. (*Id.* at 12, 15). Yet, before and after January 16, 2016, he refused to maintain security at a level acceptable for a 75-man dorm. Instead, Thomas scheduled only two security officers to monitor some 130 maximum security O dorm inmates and

permitted these officers to leave their posts without repercussion. Before the plaintiff's January 2016 assault, other inmates had been stabbed and assaulted solely because security was not present in the dorm. The facts suggest Thomas did not respond reasonably to the risk because he did not: (1) mandate that security officers could not leave their assigned posts, (2) discipline or provide further training to the officers (including Fox) who abandoned post, (3) restore security levels to that required for a 75-man dorm, or (4) increase the security level even more to accommodate the 130-man dorm.

### b.   Captains, Tew, White, and Baldwin

Captains White, Tew and Baldwin are bound by the same rules, regulations, policies and Standard Operating Procedure as defendant Thomas. (*Id.* at 8). They are responsible for ensuring duty rosters are filled, overseeing security and investigative functions from an administrative perspective (*id.*), and enforcing policies related to administrative, security, general population and segregation matters (*id.* at 16). However, White, Tew and Baldwin ignored their responsibilities, including their duties to assign "an adequately trained officer" to O Dorm and to discipline officers who abandon post. (*Id.* at 8). Plaintiff has alleged that these supervisors refused to "correct" the duty roster deficiencies and ensure proper training for the officers who were assigned to and abandoned their posts. (*Id.* at 10).

### c. Warden Leon Bolling

Warden Bolling is "directly or indirectly responsible for" the plaintiff's "safety from violence" because he is responsible for "ensuring adequately trained officers oversee the assigning of officers to security post[s] such as 'O Dorm' and ensuring administrative action is taken when such duties are in fact neglected and abandoned." (*Id.* at 13). Bolling "intentionally, willfully, recklessly and knowingly fail[s] to do so," and as a result, inmate "safety" is "being thwarted and no proper action" is taken "to correct" the security issues. (*Id.*).

Based on these pleaded facts, the court concludes there is a reasonable inference from the facts that notice for the defendants to take action rests on: (1) repeated inmate incidents occurring because security officers habitually failed to man their posts in unsafe population dorms, and/or (2) decision(s) to implement a custom or policy of lax security in the unsafe population dorms.

The court also finds that, for screening purposes, the plaintiff has adequately pleaded facts to show the defendants refused to respond reasonably to the known risk. This is an unreasonable response to the risk, particularly when it is clear the defendants did not try to implement or enforce the security measures enforced in the honor dorms. The plaintiff's allegations are sufficient to infer that implementation or enforcement of even a portion of the honor dorm security

measures in the population dorms would have taken only a modest amount of time, effort and funds, but the defendants continually refused to do so despite the substantial risk of harm to the plaintiff.

## IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except the Eighth Amendment failure-to-protect claims against defendants Fox, Thomas, Tew, White, Baldwin and Bolling in their individual capacities for monetary damages be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted. The undersigned **FURTHER RECOMMENDS** the remaining claims be **REFERRED** to the undersigned for further proceedings.

## V. Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except

for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

**DONE** and **ORDERED** on March 7, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE